IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

EDITH MCALLISTER                                                                    PLAINTIFF

vs.                                         Civil No. 4:09-cv-04070

MICHAEL J. ASTRUE                                                                   DEFENDANT
Commissioner, Social Security Administration

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Edith McAllister ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and a period of disability under Titles II and XVI of the Act.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Harry F. Barnes referred this case to the Honorable Barry A. Bryant for the purpose of making a report and recommendation.  The Court, having reviewed the entire transcript and relevant briefing, recommends that the ALJ's determination be **AFFIRMED.**

**1. Background:**

Plaintiff filed her applications for disability benefits on June 15, 2005.[1] (Tr. 84-86). Plaintiff alleged she was disabled due to back pain, depression, and anxiety. (Tr. 30-75, 101). Plaintiff

---

[1] Although it appears Plaintiff applied for SSI, her application and other documents related to her SSI claim were not included in the transcript.  Therefore, this Court will only reference the documents from her DIB application.

1

alleged an onset date of January 1, 2000. (Tr. 84). These applications were initially denied on July 21, 2005 and were denied again on reconsideration on November 3, 2005. (Tr. 76-77). On December 27, 2005, Plaintiff requested an administrative hearing on her applications. (Tr. 29).

This hearing request was granted, and an administrative hearing was held on November 30, 2006 in Texarkana, Arkansas. (Tr. 30-75). Plaintiff was present and was represented by counsel at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") Tyra Watts testified at this hearing. *See id.* On the date of this hearing, Plaintiff was forty-seven (47) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2008), and had only completed the fifth grade. (Tr. 35-37).

On May 21, 2007, the ALJ entered a unfavorable decision on Plaintiff's applications for DIB and SSI. (Tr. 12-21). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 2003. (Doc. No. 14, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2000, her alleged onset date. (Doc. No. 14, Finding 2). The ALJ determined Plaintiff had the following severe impairments:

> [A] history of cervical spondylosis at C5-C6 and C6-C7 with disc bulge/herniation at C6-C7 and vertebral body spurring at C3-C4 (Exs. 2F and 6F); a history of mild left C6 radiculopathy (Ex. 1F) (status post anterior cervical discectomy and fusion) (2001) (Exs. 2F and 12F); a history of depression/anxiety and polysubstance abuse (cannabis dependence and amphetamine dependence) with a history of court-ordered commitment for substance abuse (Ex. 13F); a history of asthma/COPD (in a smoker 1-2 packs per day for many years) (Exs. 2F and 14F), with a history of obesity. (20 CFR 404.1520(c) and 416.920(c)).

(Tr. 14, Finding 3). The ALJ also determined, however, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 15,

Finding 4).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined her Residual Functional Capacity ("RFC"). (Tr. 15, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. *See id.* Second, the ALJ determined, based upon this review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, that Plaintiff retained the following RFC:

> After careful consideration of the entire record and in consideration of the claimant's history of mild spondylosis at C5-C6 and C6-C67[2] (status post cervical fusion), asthma/COPD and obesity, with a history of mild social phobia and depression/anxiety, in addition to a history of drug/alcohol addiction (in reported remission), the undersigned finds that the claimant has the residual functional capacity to lift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently, with the ability to stand and/or [sic.] at least 6 hours in an 8-hour workday (at least 1-2 hours in a continuous period) and the ability to sit at least 6 hours in an 8-hour workday (at least 1-2 hours in a continuous period). The claimant could occasionally perform overhead reaching, with occasional climbing, stooping, crouching, kneeling and/or crawling. The claimant would require work involving no more than simple unskilled or low semi-skilled tasks; she would have the ability to understand, remember and follow instructions with adequate concentration for completion of tasks. Finally, the claimant would require a work environment in which contact with supervisors, co-workers and the public is superficial (e.g. she would have the ability to meet-greet, make change, or give simple instructions and directions).

(Tr. 15, Finding 5).

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr. 20, Finding 6). The VE testified at the administrative hearing regarding Plaintiff's PRW. (Tr. 70-72). The VE testified that Plaintiff's PRW included work as a garment assembler (unskilled, light) and cashier (unskilled, light). *See id.* The VE then testified, considering Plaintiff's RFC and other vocational considerations, that she could perform all of this PRW. *See id.* Based upon this testimony, the ALJ

---

[2] This Court presumes that the ALJ meant "C7" and not "C67."

3

determined Plaintiff had not been under a disability, as defined by the Act, from January 1, 2000 through the date of the ALJ's decision or through May 21, 2007. (Tr. 21, Finding 7).

On June 25, 2007, Plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 7). *See* 20 C.F.R. § 404.968. On May 2, 2009, the Appeals Council declined to review the ALJ's decision. (Tr. 4-6). On July 7, 2009, Plaintiff filed the present appeal. (Doc. No. 1). Both parties have filed appeal briefs. (Doc. Nos. 24-25). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2008); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See id.; Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*,

160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings this appeal claiming there is no substantial evidence supporting the ALJ's disability determination. (Doc. No. 24, Pages 4-5). Specifically, she argues the following in her appeal brief: (1) the ALJ did not properly consider the opinions of her treating physicians; (2) the

ALJ improperly found that she did not seek medical treatment; and (3) the ALJ erred by failing to consider the side effects of her medications. *See id.* In response, Defendant argues that substantial evidence supports the ALJ's disability determination and that the ALJ properly considered Plaintiff's subjective complaints of pain.[3] (Doc. No. 25, Pages 9-10). This Court will address each of Plaintiff's arguments.

### A.   Summary of Plaintiff's Medical Records

#### (1)   Physical Impairments: Prior to Plaintiff's Surgery

Plaintiff's alleged onset date is January 1, 2000. (Tr. 84). On June 28, 2000, Plaintiff reported neck pain extending down her upper extremities with her left side experiencing greater pain than her right. (Tr. 286). Upon examination, her physician characterized her as generally appearing healthy, and she exhibited no gross neurological deficits suggestive of disability at that time. *See id.* In July and August of 2000, Plaintiff underwent a series of diagnostic tests to determine the origin of her alleged neck pain. (Tr. 275). On July 1, 2000, Plaintiff's physician reported that she ambulated without difficulty or incident. (Tr. 275). Her ability to ambulate without difficulty further suggests that she was not disabled at that time. (Tr. 275).

On July 1, 2000, a cervical MRI revealed moderate stenosis and narrowing of the nerve root sheaths bilaterally at C5-6 (worse on the left) and minimal anterior bulging at C6-7. (Tr. 278). Cervical myelogram revealed mild anterior extradural defect at C5-6 apparently due to posterior vertebral body spurring. (Tr. 267). CT examination results indicated degenerative changes with moderate posterior disc bulging at C5-6 and C6-7 and some left posterior vertebral body spurring at C3-4, without significant affects to the nerve root or canal, or foraminal stenosis at that level. (Tr.

---

[3] Based upon Plaintiff's briefing, it appears that she did not specifically raise the issue of whether the ALJ properly evaluated her subjective complaints. (Doc. No. 24). Therefore, this Court will not address this issue.

266).

On October 16, 2000, electromyography revealed only mild left C6 radiculopathy with normal left median nerve conduction. (Tr. 134). This study also showed no entrapment or peripheral neuropathy. *See id.* On August 13, 2001, before Plaintiff's surgery, disc surgery and disc disease became more apparent at C6-7. (Tr. 135). Plaintiff's physician recommended surgery. (Tr. 136). On August 20, 2001, Plaintiff's diagnosis included C5-6 spondylosis with herniated disk with radiculopathy. (Tr. 654). Plaintiff underwent C5-6 and C6-7 anterior cervical diskectomy and fusion with autologous crest bone graft harvest and anterior Orion plate. (Tr. 654). Dr. Joel Patterson, M.D. performed this surgery. (Tr. 654-657).

**(2)     Physical Impairments: Subsequent to Plaintiff's Surgery**

Following this surgery, Plaintiff's medical records indicate that her back and neck pain improved substantially. On November 7, 2001, Dr. Patterson reported Plaintiff's flexion and extension x-ray films demonstrated a stable fusion. (Tr. 135). On this date, Dr. Patterson also recommended physical therapy. (Tr. 135). There is, however, no indication that Plaintiff ever participated in this recommended physical therapy. (Tr. 135). This failure indicates that Plaintiff's pain may not be as severe as she alleged. *See Shannon v. Chater,* 54 F.3d 484, 487 (8th Cir. 1995) (holding that "[f]ailure to take medication as prescribed by a doctor may suggest a finding of no disability"). Further, Dr. Patterson also reported during this appointment that Plaintiff "really doesn't have any radiculopathy to speak of." (Tr. 135).

Plaintiff's follow-up MRI performed on July 31, 2002 indicated that the post-operative study showed resolution of the previous cord compression. (Tr. 210). MRI results showed no focal disc protrusion and good alignment. (Tr. 210). On August 1, 2002, Plaintiff visited the emergency room

7

for her back and neck pain. (Tr. 209). This visit resulted in advice to take the over-the-counter pain medication Naprosyn twice daily for pain. (Tr. 209). On February 3, 2003, Plaintiff's lumbar MRI results appeared normal. (Tr. 629).

On February 5, 2004, Plaintiff reported increased back pain after she lifted heavy objects for several days. (Tr. 608). X-rays, however, failed to identify any basis for her pain, and these x-rays also revealed Plaintiff's lumbar spine was in good alignment with no fractures or spondylolysis. (Tr. 601). There were a few intermittent reports of back pain symptoms thereafter. (Tr.523-524, 528, 538, 576, 579). These reports, however, do not appear to have been consistent, but, instead, appear to have been occasional reports.

Around the time of Plaintiff's application in June of 2005, she reported back pain, depression, and anxiety. (Tr. 101). Plaintiff's activities, however, were inconsistent with her claim of disability and social phobia. (Tr. 106). Plaintiff reported going outside 3-4 times per week, driving a car, riding in a car, going to the store, being able to pay bills, being able to count change, and being able to handle savings and checking accounts. (Tr. 106). In addition, as the ALJ observed in his decision, Plaintiff reported going out to eat and getting out of her house once to twice a week. (Tr. 107). These activities are also inconsistent with her allegations that she is disabled due to social phobia, anxiety, and physical pain.

### (3)    Mental Impairments

For her alleged mental impairments, Plaintiff reported throughout 2006 to Shahzad Allawala, M.D. for treatment.[4]  (Tr. 689, 693). Plaintiff's treatment records dated during this time period

---

[4] It appears Plaintiff also had a nervous breakdown in 1999. (Tr. 30-75). Plaintiff's alleged onset date is, however, January 1, 2000. Therefore, her nervous breakdown was dated prior to the relevant time period in this case.

8

indicate that she qualified for several medications through the Patient Assistant Program, that she denied side effects from her medication, and that her medications appeared to alleviate her symptoms. (Tr. 689, 693).

On March 6, 2007, Plaintiff underwent a mental status examination with Tom Wright, Ph.D. (Tr. 824-828). Dr. Wright reported that he could not rule out "[m]alingering or exaggeration of symptoms" from Plaintiff. (Tr. 828). Plaintiff's score on diagnostic testing revealed a heightened "F" score most consistent with "fake-bad" responses. (Tr. 826-827). During this examination, Dr. Wright found Plaintiff was not obviously depressed and exhibited clear sensorium, normal speech, and coherent and goal-directed thought processes. (Tr. 825).

Dr. Wright's examination also revealed that Plaintiff possessed adequate reasoning, and no disturbance of executive functioning and normal intelligence. (Tr. 825). Dr. Wright concluded that Plaintiff exhibited no obvious psychological limitation of adaptive functioning beyond some memory impairment. (Tr. 825). Dr. Wright observed that Plaintiff would have some degree of difficulty remembering instructions and required operational sequences in a work setting. (Tr. 827). Nevertheless, Plaintiff retained the presence of mind to perform most basic activities of daily living. (Tr. 827).

      **B.**    **Plaintiff's Treating Physicians**

Plaintiff claims the ALJ erred by disregarding the opinions of her treating physicians. (Doc. No. 24, Pages 1-5). Specifically, Plaintiff claims that the opinions of Dr. Patterson and her psychiatrists Dr. Allawala and Dr. Seidel support her claim that she is disabled. *See id.* After reviewing Plaintiff's medical records, however, this Court finds no basis for her argument. First, it appears that Dr. Patterson last examined Plaintiff on November 7, 2001. (Tr. 135). On that date,

Dr. Patterson noted that Plaintiff's "[f]lexion/extension films demonstrate a stable fusion" and that she had did not have "any radiculopathy to speak of." (Tr. 135). These findings indicate that Plaintiff's surgery was successful and that Plaintiff's back and neck pain had been alleviated. Thus, Dr. Patterson's findings are consistent with the ALJ's finding of no disability.

Second, the opinions of Plaintiff's psychiatrists do not support a finding of disability. Notably, despite some problems with her medications, it appears Plaintiff's psychiatrist Dr. Allawala was largely successful in treating Plaintiff's mental impairments with medication. (Tr. 689, 693). For example, on February 27, 2006, Dr. Allawala continued to treat Plaintiff with several different prescription medications, did not find Plaintiff suffered from any major psychological problems, and noted that Plaintiff had no homicidal or suicidal ideation, no auditory or visual hallucinations, no paranoia, and no delusions. (Tr. 693). Certainly, Dr. Allawala's findings are consistent with the ALJ's RFC determination regarding her mental limitations that Plaintiff is able to perform simple, unskilled or semi-skilled tasks that only include superficial contact with supervisors, co-workers, and the public.

Plaintiff also references the opinions of Dr. Wright who found Plaintiff may have some degree of difficulty in remembering instructions and required operational sequences. (Doc. No. 24, Page 4). Even assuming this assessment is entirely accurate, this assessment is consistent with the ALJ's determination that Plaintiff is only able to perform "simple, unskilled or semi-skilled tasks." Thus, this Court finds no error in the ALJ's evaluation of the opinions of Plaintiff's treating physicians.

    **C.**    **Failure to Seek Medical Treatment**

Plaintiff claims the ALJ erred by finding that she did not consistently seek medical treatment

for her allegedly disabling impairments. (Doc. No. 24, Page 4). Plaintiff claims that the record demonstrates that she consistently sought treatment at both Wadley Hospital and St. Michael's Hospital for both her back and neck pain. *See id.* Specifically, Plaintiff references these medical records from Wadley Hospital and St. Michael's Hospital and claims she sought treatment at these hospitals on December 9, 2002, February 3-4, 2003, September 1-2, 2003, December 3, 2003[5], February 5, 2004, April 11, 2004, April 20-21, 2004, May 8, 2004, and March 21, 2006 for her alleged physical impairments. *See id.* Plaintiff also claims that she has been receiving treatment for her allegedly disabling mental impairments since 1999 and that these medical records establish she is disabled due to her mental impairments. *See id.*

After reviewing these records, this Courts finds that Plaintiff's visits to the hospital were, at best, infrequent and certainly do not establish she is disabled due to neck and back pain. Over a four year period, according to Plaintiff's count, she only went to the hospital nine times (or roughly twice a year) for her back and neck pain. (Tr. 517-531, 577-580, 583-586, 589-592, 594-595, 600, 605, 608, 612, 615, 619-621, 626, 633, 637, 630). Further, for her mental health records, the fact that Plaintiff was committed in 1999 is irrelevant for this Court's purposes. Plaintiff's alleged onset date is January 1, 2000. (Tr. 84). Plaintiff has provided no records to this Court establishing she was unable to work *after* 1999 due to a mental impairment.

**D.     Side Effects of Plaintiff's Medications**

Plaintiff claims that the ALJ failed to consider the side effects of her medication and that those side effects caused her to be disabled. (Doc. No. 24, Page 5). Specifically, Plaintiff claims that

---

[5] Plaintiff claims she went to UAMS on this date. (Doc. No. 24, Pages 2-3). There is, however, no transcript number for this record. Therefore, it is unclear whether Plaintiff was seeking treatment for her back and neck pain or for her alleged mental impairments.

11

those side effects impacted her concentration such that she was unable to get her GED.  *See id.*  In making this claim, however, Plaintiff did not reference any *specific* side effects to any *specific* medication that caused her to unable to obtain her GED.  (Tr. 53-54).  Further, in his opinion, the ALJ evaluated the side effects of Plaintiff's medications. (Tr. 17).  Because Plaintiff has provided no *specific* basis for her claim that this case should be reversed and because the ALJ considered the side effects of her medications, there appears to be no error with the ALJ's evaluation of the side effects of Plaintiff's medication.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence.  Accordingly, this Court recommends this case be **AFFIRMED**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger** *de novo* **review by the district court.**  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

**ENTERED** this **29th day of July, 2010.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE